UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KAREN FIRCHAU, Trustee of the Craig
Heath Revocable Trust Dated October
4, 2019, individually and derivatively
on behalf of Quality Housing, LLC

        Petitioner,

        v.

PHUONG QUICK,

        Respondent.

No. 25 CV 333

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

An arbitrator ruled in favor of the Craig Heath Revocable Trust Dated October 4, 2019, and found that respondent Phuong Quick breached the operating agreement of Quality Housing, LLC when she failed to dissolve and liquidate the company after the death of former company member and manager, Craig Heath. The arbitrator further found that Quick harmed the trust when, after failing to dissolve and liquidate Quality Housing, Quick entered into an agreement with her son without the consent of the trust that cut the trust out of the profits of the company.

Firchau as trustee petitions to confirm the arbitration award, and Quick moves to vacate or, in the alternative, modify it. Quick's son, Robert Quick, and his company Home Hub move to intervene. The award is confirmed in large part and modified to exclude Robert Quick and Home Hub from the damages award. Robert Quick and Home Hub's motion to intervene is denied.

## I.    Legal Standards

An arbitration award is "largely immune from … scrutiny in court." *Zimmer Biomet Holdings, Inc. v. Insall*, 108 F.4th 512, 515 (7th Cir.), *cert. denied*, 145 S. Ct. 773 (2024) (internal quotation marks omitted). An arbitration award may be vacated (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a).

The question "is not whether the arbitrator … erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract. If they did, their interpretation is conclusive." *Am. Zurich Ins. Co. v. Sun Holdings, Inc.*, 103 F.4th 475, 477 (7th Cir. 2024) (quoting *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1194–95 (7th Cir. 1987)). "Only if there is no possible interpretive route to the award may a noncontractual basis … be inferred and the award set aside." *Kinsella v. Baker Hughes Oilfield Ops., LLC*, 66 F.4th 1099, 1104 (7th Cir. 2023) (internal quotation marks omitted).

## II.    Facts

Craig Heath and respondent Phuong Quick were equal members and managers of Quality Housing, LLC. [12-10] at 3.[1] In 2021, Heath died. [12-10] at 4. At the time of his death, his personal representative and assignee of his rights in his company became petitioner Karen Firchau, the trustee of the Craig Heath Revocable Trust Dated October 4, 2019. [12-10] at 4. The trust attempted to dissolve and liquidate Quality Housing as provided in the company's operating agreement. [12-10] at 4. When it was not dissolved, the trust sought Heath's share of company distributions. [12-10] at 4. In 2023, Quick stopped payment of distributions to the trust and entered into a contract with her son and a new company he had set up, awarding him management of the company properties and all the revenue from management—what had been Quality Housing's distributions. [12-10] at 4.

The trust initiated arbitration with Quick, and after a three-day hearing and post-hearing briefing, the arbitrator ruled in the trust's favor and awarded the trust a total of $1,229,704.00, plus $15,714 per month until Quality Housing was dissolved or distributions resumed. [12-10] at 1–4.

## III.   Analysis

### A.    Trust as member and manager of LLC

The arbitrator found that the trust was a member and manager of Quality Housing. Quick argues that this was error, because there were terms in the operating

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from arbitrator's award, attached to Quick's response and motion, [12-10].

3

agreement that a membership interest could only be transferred or obtained with the unanimous consent of all the members. She also argues that the operating agreement was silent on what happens when a manager passes away, so the LLC Act fills the void, and that in granting the trust managerial rights, the arbitrator manifestly disregarded the law.

I cannot reconsider the merits of an award even if an arbitrator makes a factual or legal error when interpreting a contract. *Zimmer Biomet*, 108 F.4th at 515. Even a "manifest disregard of the law" is not a reason to overturn an arbitrator's decision, it is only an arbitrator's directive to the parties to violate the law that must be overturned by the court. *See Titan Tire Corp. of Freeport, Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 734 F.3d 708, 716–17 (7th Cir. 2013).

### 1. *Trust as a member*

The arbitrator ruled that the trust was a member of the company because, since Heath's death, Quick had "consistently recognized and treated the Trust as a Member/Manager: she paid distributions to it for 18 months; she engaged in efforts to buy or sell shares to or from the Trust; she requested Trust signature on QH business matters." [12-10] at 4. The arbitrator also ruled that Quick waived the issue of the trust's membership because she failed to raise the issue of arbitrability and engaged in arbitration. Because under the operating agreement the arbitration clause was only binding on members, the arbitrator found that Quick implicitly

confirmed that the trust was a member when she engaged in arbitration. [12-10] at 6.

The arbitrator found that even if the transfer of membership to the trust did not comport with the restrictions in the operating agreement, Quick waived the provisions of the operating agreement that required "unanimous consent" of the remaining members by acknowledging that the trust was a member for years. [12-10] at 10. He found that Quick intended to waive the provisions in the operating contract when she listed the trust as a 50 percent owner on Quality Housing's annual report and tax returns. [12-10] at 11. Quick's testimony at the arbitration hearing that she "certainly hope[d]" that the trust was a member of Quality Housing supported waiver as well. [12-10] at 11.

The arbitrator also found that Quick was estopped from claiming that the trust was not a member of Quality Housing because Quick accepted tax benefits based on the trust being a member of the company. [12-10] at 6. Quality Housing's certified public accountant testified during the hearing that the trust was treated as a partner and member of Quality Housing in its tax returns. [12-10] at 6. Because Quick and Quality Housing took one position in their tax returns, the arbitrator found that Quick should not be able to later take an inconsistent position to avoid the corresponding effects of that position.

Quick says that the operating agreement does not allow for the transfer of membership without the unanimous removal and vote of members, and neither Heath nor the trust sought or obtained approval from the United States Department

of Agriculture and Rural Development as required by the agreement. In doing so, Quick says the arbitrator engaged in a manifest disregard of the law. However, a "manifest disregard of the law" where the arbitrator does not direct a party to violate a law is not a reason to vacate an arbitration decision. *Titan Tire*, 734 F.3d at 716–17. Indeed, the question I must answer is simply whether the arbitrator interpreted the contract. If he did, his interpretation is conclusive. *Am. Zurich Ins.*, 103 F.4th at 477.

The arbitrator's waiver holding was an interpretation of the contract. As was the arbitrator's finding that Quick consented to the trust as a member. Because the arbitrator interpreted the contract and applied the facts to show that Quick waived provisions of it through her conduct—which, is expressly allowed under Illinois contract law, *see Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 636 (7th Cir. 2022)—or was estopped from arguing otherwise—also allowed under Illinois contract law, *see id.*—the arbitrator's interpretation is conclusive. I decline to vacate the arbitrator's decision on this ground.

### 2. *Trust as a manager*

The arbitrator also ruled that the trust was a manager of Quality Housing. He found that the operating agreement was silent as to the effect of a manager passing away. He said he would not rewrite the contract to require a vote of approval for the trust to become a manager and so found that Heath's managerial rights passed onto the trust. [12-10] at 10. The arbitrator pointed out that Quick herself confirmed that the trust was a manager when she listed Firchau as a "manager and any member

6

having the authority of a manager" in Quality Housing's 2022 Annual Report filed under penalty of perjury. [12-10] at 10.

Quick argues that in finding the trust a manager of Quality Housing, the arbitrator failed to apply the Illinois LLC Act, which says that a manager "must be designated, appointed, elected, removed, or replaced by a vote, approval, or consent of a majority of the members." 805 ILCS 180/15-1(c)(3)(A). The failure to apply the Act, Quick says, was a manifest disregard of the law.

The arbitrator interpreted the contract to not require a vote of approval for the trust to become a manager. And "[j]ust as an arbitrator is entitled to interpret the parties' contract without judicial review, so an arbitrator is entitled to interpret the law applied to that contract." *Hyatt Franchising, L.L.C. v. Shen Zhen New World I, LLC*, 876 F.3d 900, 902 (7th Cir. 2017). Although he may have made a legal error in failing to apply the Illinois LLC Act, this is not enough for me to step in and consider the merits of the claim. *Zimmer Biomet*, 108 F.4th at 515. It is enough that the arbitrator "tried to apply the contract that the parties signed." *Id.* at 519. At this point, my review ends.

### B. Award against a non-party

In the "award" section of the arbitrator's decision, the arbitrator said he had "*quasi in rem* jurisdiction over all QH property that Mr. Robert Quick or his company Home Hub obtained or now hold." [12-10] at 2. Based on this "*quasi in rem*" jurisdiction, the arbitrator ordered Robert Quick and Home Hub to "disgorge all such property back to QH immediately and to provide an accounting, under oath, for all

7

such property." [12-10] at 3. Quick argues that the arbitrator exceeded his power in issuing an award against a non-party. Quick asks this court to set aside the entire award.

An award may be vacated where an arbitrator "exceeded [his] powers." 9 U.S.C. § 10(a)(4). Quick bears the "heavy burden" to show the arbitrator acted "outside the scope of his contractually delegated authority." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (internal quotation marks and citations omitted).

Because arbitration is contractual, "'[a] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1019 (7th Cir. 2024) (quoting *Scheurer v. Fromm Fam. Foods, LLC*, 863 F.3d 748, 752 (7th Cir. 2017)); *see also Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1256–57 (7th Cir. 1994) (vacating part of award for losses from a transaction between the petitioner and a third party). Robert Quick and Home Hub were not part of the operating agreement, and so were third parties to the contract. The arbitrator had no power to order either Robert Quick or Home Hub to do anything. By ordering Robert Quick and Home Hub to disgorge property back to Quality Housing, the arbitrator exceeded his power. This portion of the award must be vacated.

I only modify this portion of the award. The inclusion of Robert Quick and Home Hub does not affect the merits of the controversy. 9 U.S.C. § 11(c) (an award may be modified where "the award is imperfect in matter of form not affecting the merits of the controversy"); *see also Eljer Mfg.*, 14 F.3d at 1256–57 (vacating only the

portion of the damages award that arose from a dispute between the respondent and a non-party). The rest of the arbitrator's decision was based on the merits of the controversy between Firchau and Quick, which was within his power under the operating agreement.

To the extent that Robert Quick already gave an accounting of the Quality Housing property in his possession, the issue is moot.

### C. Partiality of the arbitrator

Quick argues that the award should be vacated because of the evident partiality of the arbitrator. An award can be vacated "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2). Quick must show that the arbitrator harbored "direct, definite, demonstrable bias" against her. *Harter v. Iowa Grain Co.*, 220 F.3d 544, 556 (7th Cir. 2000); *see also Tamari v. Vache Halsey Stuart Inc.*, 619 F.2d 1196, 1200 (7th Cir. 1980) (the "interest or bias of an arbitrator must be direct, definite, and capable of demonstration rather than remote, uncertain, or speculative."). When a party claims arbitrator bias, I must "scan the record for evidence of partiality." *Harter*, 220 F.3d at 557.

The case law cited by Quick describes "partiality" in the context of an arbitrator having an interest or relationship that might affect impartiality or lack of independence—for example, a arbitrator's failure to disclose a "significant compromising connection to the parties," like a prospective financial relationship with a party, *Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F.Supp.2d 939, 942–43 (N.D. Ill. 2010); a direct competition with a party, *Admin.*

*Dist. Council 1 of Ill. of Int'l Union of Bricklayers & Allied Craftworkers, AFL-CIO v. Masonry Co., Inc.*, 941 F.Supp.2d 912, 917–18 (N.D. Ill. 2012); or an employment relationship with someone associated with a party. *Tamari*, 619 F.2d at 1198–1200. But that is not the kind of partiality that Quick alleges here. Quick does not allege that the arbitrator was not a neutral arbitrator. Instead, she alleges bias based on questioning by the arbitrator and language in the award about Quick and her credibility.

In *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1264–65 (7th Cir. 1992), an arbitrator stepped in during cross-examination to direct a witness to a particular section of the contract in answering a question. There was no bias in doing so because the parties explicitly agreed to allow the arbitrators to ask questions and "there is nothing apparently prejudicial about an arbitrator wanting to get to the essence of an issue before the panel." *Id.* at 1265.

The arbitrator in this case began asking questions during the preliminary statements of the lawyers, and continued to ask questions of the witnesses, without any objection from either party. *See, e.g.*, [12-1] at 4–6 (10:11–19:3) (questioning during Firchau's opening statement); 6–10 (21:18–34:9) (questioning during Quick's opening statement); 12–14 (44:3–53:8), 33 (126:24–129:18), 42 (162:9–165:5) (questioning Firchau's expert); 20 (75:13–76:1, 77:14–15) (questioning Firchau's appraiser); 54 (210:20–211:22), 58 (226:6–17, 228:18–229:23), 60–61 (236:14–238:4) (questioning Firchau); [12-2] at 18 (391:22–392:4), 20–21 (398:22–403:10) (questioning Quick).

10

Quick takes issue with the arbitrator's questioning during her recross-examination, when he asked Quick about amending her 2022 annual report to the Illinois Secretary of State, and in particular, his question: "Then why did you treat her as a member and manager and pay the Trust its share?" [12-2] at 62–63 (567:2–570:8). The arbitrator overruled counsel's objection to the question at the time. [12-2] at 63 (571:5). The next day, at the start of the hearing, the arbitrator apologized to counsel and Quick and sustained the objection, saying he would not consider that exchange in making his decision. [12-3] at 2 (3:7–15).

The arbitrator's questioning of Quick goes to a crucial question before him: whether Quick had waived the provision of the operating agreement requiring a vote for a new member or manager. There is nothing prejudicial in asking those questions. *Health Servs. Mgmt. Corp.*, 975 F.2d at 1265. Even then, the arbitrator ended up not using the exchange in making his decision, and Quick does not point to evidence that he did.

Even if he did take the exchange into consideration, it was not evidence of partiality, but of the arbitrator attempting to get into the "essence of an issue." *Id.* And even if this question was an expression of the arbitrator's personal views about Quick's conduct, "[i]t is to be expected that after a judge or an arbitrator has heard considerable testimony, he will have some view of the case. As long as that view is one which arises from the evidence and the conduct of the parties it cannot be fairly claimed that some expression of that view amounts to bias." *Id.* at 1267 (quoting *Ballantine Books, Inc. v. Capital Dist. Co.*, 302 F.2d 17, 21 (2d Cir. 1962)). The view

11

that Quick treated the trust as a member and manager came directly from the evidence, and although it is best for arbitrators to be careful about expressing an opinion before reaching a decision, the expression "did not comprise prejudicial misbehavior nor evident partiality." *Id.*

Quick says that it is the "exchange and demeanor" that was concrete evidence of the arbitrator's partiality. This is akin to claims of judicial bias that arise from time to time. "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Carter v. City of Wauwatosa*, 114 F.4th 866, 882 (7th Cir. 2024) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). It is only where the remarks reveal an opinion from an extrajudicial source or if they reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible" that judicial bias may be inferred. *Liteky*, 510 U.S. at 555. "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women … sometimes display," do not establish bias or partiality. *Id.* at 555–56.

The arbitrator questioned nearly every witness during the arbitration proceedings. That he questioned Quick about an issue going to the merits of the case does not support that he was biased against Quick. Even if his demeanor was argumentative, as Quick claims, his questioning about Quick's conduct that was necessary to a pivotal question before him does not show "such a high degree of … antagonism as to make fair judgment impossible." Quick does not explain how simply

12

questioning Quick during her cross-examination, even with questions that suggested what the arbitrator's thoughts on the merits might have been, exhibited such antagonism to Quick's case that no fair judgment could be rendered. The arbitrator's questioning of Quick does not show partiality.

Quick also points to language in the award where the arbitrator characterized Quick as "not credible" and "simply a disaster" as evidence of the arbitrator's partiality. *See* [12-10] at 11. I am not permitted to "disturb the arbitrator's findings as to the relative credibilities of each side's evidence." *Eljer Mfg.*, 14 F.3d at 1255. The arbitrator saying Quick was not credible was precisely his job, and the "simply a disaster" finding explains why he did not find her credible.

The "simply a disaster" language does not evince partiality during the proceedings simply because it is harsh language. *Cf. Liteky*, 510 U.S. at 550–51 (1994) ("The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant …. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task."). Where opinions are formed by the judge—or, in this case, arbitrator—on the basis of facts introduced during a proceeding, they "do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555; *Carter*, 114 F.4th at 882. Again, nothing in the "simply a disaster" language displayed a "deep-seated antagonism" such that a fair

judgment was impossible. Rather, it was the arbitrator's opinion on Quick's testimony, leading to his conclusion that she was not credible. There is no evidence that the arbitrator displayed evident partiality.

### D.  Modification of award

Finally, Quick argues that the award should be modified to prevent double recovery. An award may be modified where there was an "evident material miscalculation of figures." 9 U.S.C. § 11(a). "When an award orders a party to pay damages that have already been paid or which are included elsewhere in the award," it constitutes "double recovery" that is a "materially unjust calculation which may be modified." *Eljer Mfg*, 14 F.3d at 1254. Quick says that awarding both the fair market value of Quality Housing at the time it should have initially been dissolved in 2021, and the right to dissolve and distribute the assets of the company at present compensates the trust twice for its 50 percent interest in Quality Housing. But the damages award is based on two separate breaches of contract: first, the damages to the trust when Quick breached the operating agreement in not dissolving Quality Housing upon Heath's death, and second, the damages to the trust when Quick entered into a contract without the trust's consent that deprived the trust of its distributions it was entitled to under the operating agreement. [12-10] at 1–2. The way to fund this award is to dissolve and liquidate Quality Housing—what should have been done in the first place. The money from the liquidation should first be applied to the award, and, if there is any left over, should be split between the trust and Quick. This is not awarding the trust for its 50 percent interest twice; the

14

payment is not a buyout of the trust's interest. Rather, it is an award of damages based on two separate breaches. After the award of damages is settled, the remaining funds will be allocated as called for in the operating agreement. There is no double counting, and the damages award is affirmed, except for the portion as to Robert Quick and Home Hub.

### E.    Motion to Intervene

Robert Quick and Home Hub move to intervene both as of right and with the permission of the court.

#### 1.    *Procedural requirements for intervention*

Federal Rule of Civil Procedure 24(c) requires a motion for intervention to "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." A motion "'technically may not just "adopt" the pleadings of an original party'" but the rule is not "inflexible" and "if no prejudice would result, a district court has the discretion to accept a procedurally defective motion." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 595 (7th Cir. 1993) (quoting *Shevlin v. Shewe*, 809 F.2d 447, 450 (7th Cir. 1987)). Here, there is no prejudice if I accept the motion. Proposed intervenors ask to join an already-filed motion and response, which clearly delineates their claim: the arbitration award should be vacated because the arbitrator exceeded his power. Intervenors did not add anything or extend the time for briefing. There is no prejudice in accepting the motion.

2.    *Intervention as of right*

A court must allow intervention to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Intervention is required when (1) the motion is timely; (2) the moving party has an interest relating to the property or transaction at issue; (3) the interest may be impaired or impeded by the disposition of the case; and (4) the existing parties do not adequately represent the moving party's interests. *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 746 (7th Cir. 2020). "The proposed intervenor has the burden of establishing all four elements; the lack of even one requires that the court deny the motion." *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019). A would-be intervenor needs to have a "direct, significant and legally protectable interest in the [subject] at issue in the lawsuit." *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 686 (7th Cir. 2023) (internal quotation marks and citation omitted).

When there is "no notable relationship between the existing party and the applicant for intervention," the default rule is a "lenient" one: "the applicant for intervention need only show 'that the representation of his interest [by the existing party] "*may be*" inadequate.'" *Id.* at 688 (quoting *Planned Parenthood*, 942 F.3d at 799)). The default rule applies unless the interests of a would-be intervenor and an existing party have the "same goal," which means their interests are "genuinely

identical." *Id.* I assume without deciding that the default rule applies; if Robert Quick and Home Hub cannot reach this lenient standard, they cannot meet the higher standards under the intermediate or strictest standards for mandatory intervention. Proposed intervenors provide no evidence or argument that the existing parties do not adequately represent their interest. Although it is a low bar to show that the existing party's representation "may be" inadequate, it is still a bar. The proposed intervenors have not met their burden to establish this element, and I am required to deny the motion for intervention as of right. *Planned Parenthood*, 942 F.3d at 797.

### 3. *Permissive intervention*

Proposed intervenors also move for permissive intervention. The court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Reasons to deny permissive intervention include prejudice to the rights of the original parties, undue delay, costs, judicial economy, and alignment of the parties that won't add substance to the arguments. *See Bost*, 75 F.4th at 691. Here, there is no reason to allow Robert Quick and Home Hub to intervene. The alignment of the proposed intervenors' arguments and Quick's are such that intervention would not add any substance to the arguments. *Id.* Quick adequately represented the proposed intervenors' interests—I have ruled in her (and in proposed intervenors') favor in modifying the award and vacating any damages award against Robert Quick and Home Hub. The reason for the intervention has been resolved as proposed intervenors would have

requested, so there is no need for intervention. The motion for permissive intervention is denied.

## IV.    Conclusion

Firchau's petition to confirm the arbitration award, [1], is granted in large part, and modified in part, and Quick's motion to vacate the award, [12], is denied except as to the damages award against Robert Quick and Home Hub. Robert Quick and Home Hub's motion to intervene, [14], is denied. Enter judgment confirming the arbitration award in part, modifying it in part to vacate the award against Robert Quick and Home Hub, and terminate the case.


ENTER:

_____
Manish S. Shah
United States District Judge

Date: November 3, 2025

18